Helen Strain BJORNSTRUP, Appellant
(Plaintiff below),
and
Ove H. Bjornstrup (Plaintiff below)
v.
Harry E. COLE, Appellee (Defendant below),
and
Dorothy C. Cole (Defendant below).
No. 3227.

Supreme Court of Wyoming.
June 23, 1964.

David N. Hitchcock, Laramie, for appellants.

Norman V. Johnson, Laramie, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Defendant Harry E. Cole married Helen Strain, now Helen Strain Bjornstrup, in 1947, but on September 6, 1961, he was granted a divorce from Helen. The divorce decree incorporated and confirmed a property settlement agreement executed by the parties, which awarded Harry E. Cole the ranch property, livestock, and farm machinery owned by the parties, Harry E. Cole assuming all indebtedness thereon, and provided that Harry E. Cole assume all of Helen's obligations. It also awarded Helen $2,000 in cash. The divorce decree was not appealed. Thereafter, on February 23, 1963, Helen having married Ove H. Bjornstrup within four days after she was divorced by Harry E. Cole, Helen and her new husband Ove H. Bjornstrup brought suit against Harry E. Cole and his then wife, who was Dorothy C. Cole, seeking to set aside, cancel, vacate, rescind, and nullify the property settlement agreement which had been confirmed and incorporated in the divorce decree granted Harry E. Cole in 1961, and to set aside the deeds Helen had signed pursuant to that agreement. This later action also prayed that such a division of the properties which were owned by Harry and Helen on August 17, 1961, be ad-judged so that Helen would receive one-half of those properties, or, in the alternative, that Helen might have judgment against Harry and his wife for $20,000 and costs. Upon trial, judgment was rendered in favor of Harry E. Cole and his wife Dorothy C. Cole. Helen Strain Bjornstrup appeals upon the grounds the settlement was (a) unfair and inequitable, (b) obtained by duress and misrepresentation, and (c) against public policy.

By the evidence given by plaintiff herself, she began drinking excessively some two years prior to the divorce, was guilty in the grossest manner of unwifely conduct, culminating in adultery with a paramour whom she married immediately after being divorced by Harry E. Cole; and that by criticizing her husband's management of their ranch and livestock-growing business, she incited bickering and quarrels between them. However, other evidence shows her husband had successfully conducted and managed the ranching and livestock business and, in addition, had supplemented the family income by obtaining and working in employment although this required his walking from the ranch to Albany through snow so impassable that walking was the only way he could get to and from the same; that appellant went to a lawyer, who had served her family, for the purpose of seeking a divorce so she could marry her present husband, but when she disclosed to that attorney the facts about her conduct he advised her she was without grounds to obtain a divorce. She was also told that her husband did have grounds for a divorce but that she would be entitled to a property settlement. Other evidence shows that when she returned to this same attorney with her husband, she was advised and urged to see another lawyer, but this she refused to do. Further evidence shows that after the attorney suggested to both parties that if they could agree upon a property settlement, the court, if granting a divorce, would probably approve such agreement, the appellant announced all she wanted was "Ove" and $2,000 as quickly as

possible. The attorney then drafted the settlement agreement according to her instruction, and the same was executed by both parties, later submitted to and approved by the court which granted Harry E. Cole a decree of divorce from Helen and appended the settlement agreement thereto. However, before the divorce was granted, Harry E. Cole pleaded with his wife and said to her, "Well, it is not very easy to get over being gone with another fellow for a week but if you will quit seeing him and quit drinking, and give him up, and if we will both try sincerely we can get along and make a go of our marriage without any more trouble." And again, as late as two days before the divorce was granted, Harry pleaded with appellant that they be reconciled saying, "Helen, in Heavens name why can't we call this thing off." But appellant replied, "I can't, I want Ove."

The evidence shows that when Harry and Helen were married Harry owned only his personal effects, and Helen owned a few cattle, bonds, and money, all of the estimated value of slightly more than $2,000. It was also shown that the ranch property had reserved to the vendors 20 acres upon which was located the ranch house; that in 1960, the parties built a modern home upon the ranch with modern facilities, electricity, telephone, running water, etcetera; that Helen kept the ranch accounts and at times had given some assistance with ranch chores.

■ Conceding from this evidence that appellant had conducted herself in a wifely manner until approximately two years before the divorce, her flagrant conduct from thence on forfeited whatever consideration her previous actions might have warranted. Whatever equities the parties had accumulated in the ranch and properties would have been lost except for the continued work and efforts of Harry. It was Harry alone who made possible the meeting of the purchase-price obligations for the ranch, machinery, livestock, etcetera, which all could have been lost except for his sole efforts.

■ There is no evidence whatsoever that the settlement agreement was obtained from appellant by misrepresentation or duress. The terms of the agreement were those asked by appellant and at her insistence.

■■ The covet imputations of impropriety on the part of the lawyer to whom appellant went to obtain a divorce, by citation of authorities disapproving agreements prepared by counsel for the adverse party, are not merited. The honorable and distinguished attorney who drafted the agreement and ultimately represented Harry E. Cole in the divorce proceeding advised appellant that his position was adverse to her and urged·her not to rely upon what he said and that appellant should seek the advice of other counsel. He could not have done more. There was no way for him to compel appellant to obtain other counsel. Neither was he required to forego employment from her husband who, in the attorney's opinion, now vindicated, had ample grounds for divorce. Nevertheless, the attorney told appellant she had property rights and that she should go to other counsel. It was only after she refused to get other counsel that he drafted the settlement agreement.

■ In addition to the three grounds set forth as the basis for this appeal, counsel argues that appellant was incompetent at the time she executed the agreement and did not understand it to be a final settlement of the property rights between the parties. Appellant's own testimony as to her competency was so contradictory as to be confusing and inconclusive. On the other hand, there was definite and positive evidence that she was entirely normal at the time and that she was rational, coherent, and not depressed. Hence the trial court's finding that she was competent may not be disturbed.

Appellant's contention that the settlement agreement was unfair and inequitable is not supported by the undisputed facts. While counsel feels that the Coles purchased the portion of the ranch at a bargain price be-

cause the vendors were the parents of Helen, that does not assist the charge of the settlement being unfair and inequitable. There was also evidence that Harry Cole rendered certain services to those parents which may have entered into the deal. We will not speculate, however, as to whether the money-price was the sole consideration in the purchase of a portion of the ranch properties any more than we will speculate that the price was arrived at because of relationships.

 The value of a wife's services as a contributing factor in the acquisition of properties after marriage is, of course, a matter to be considered. Notwithstanding that, however, the continuance of wifely conduct in preserving the home also bears largely upon the value of her contribution. This is of special and even greater importance from the standpoint of value of her services when the properties concerned are not fully paid for and the equity in them depends largely upon the success of the ranching and livestock-growing efforts of the parties. When one such party wrecks the home, creates serious disturbance of family relationship, and leaves the entire burden of preserving the equities in the property upon the other party, the possible value of past services and contributions readily disappears. In such a case the trial court must be left a wide discretion in determining the fairness of a settlement agreed to by the parties, and that court may, and in this case undoubtedly did, take into consideration the entire circumstances as disclosed by the evidence. The appellant came into the marriage with approximately $2,000. By her own choice she destroyed the marriage but nevertheless left it with $2,000 in cash and with having her own debts paid. She was not unfairly treated. She got exactly what she wanted—not only what she brought into the marriage but more—the man with whom she had committed adultery.

But counsel says the settlement is against public policy. We do not believe it is public policy to reward iniquity with bonuses. It cannot be good policy to tacitly condone such actions as those of the appellant and her co-offender, who was also a co-plaintiff in this action, by feathering their unhealthy nest with the fruits of the discarded husband's labored efforts. If there is public policy to be considered, that policy, in the interest of the public, must be to strongly discountenance and discourage the type of conduct of which appellant and her new spouse have been guilty.

There is no error in the trial court's approving, confirming, and upholding the property settlement agreement which was voluntarily and understandingly entered into by both parties.

Affirmed.